**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

OKECHUKWU UZO ONYEME,
Petitioner,

v.

No. 96-2257

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A29-296-890)

Argued: April 6, 1998

Decided: June 5, 1998

Before WIDENER, HAMILTON, and MOTZ, Circuit Judges.

_____

Petition for review denied by published opinion. Judge Hamilton
wrote the opinion, in which Judge Widener and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Roger Carl Algase, New York, New York, for Petitioner.
Laura Marlene Friedman, Office of Immigration Litigation, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Respondent. **ON BRIEF:** Frank W. Hunger, Assis-
tant Attorney General, Brenda E. Ellison, Senior Litigation Counsel,
Office of Immigration Litigation, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

HAMILTON, Circuit Judge:

Okechukwu Onyeme, a Nigerian citizen, petitions for review of the final order of deportation issued against him by the Board of Immigration Appeals (BIA). Finding no error, we deny the petition for review.

I.

Petitioner Okechukwu Onyeme is a 38-year-old male native and citizen of Nigeria. In 1986, Onyeme obtained a visitor's visa to the United States by fraudulently representing that he was married to a Nigerian woman and had a child. Four days after obtaining the visa, on November 8, 1986, Onyeme entered the United States as a visitor for pleasure. He remained in the United States after the expiration of his visa, and in 1989, he married an American citizen, Kristin Jacobsen.

On December 1, 1989, Jacobsen filed a visa petition on Onyeme's behalf, and Onyeme applied for an adjustment of his status to that of permanent resident under § 245 of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1255. Faced with the fact that he had gained entry into the United States by representing that he was married to a Nigerian citizen, Onyeme submitted a fraudulent Nigerian divorce decree in support of his application for adjustment of status based on his marriage to Jacobsen. Subsequently, on June 27, 1990, Onyeme stated to an Immigration and Naturalization Service (INS) examiner in sworn testimony that his prior marriage had been terminated.

On January 17, 1991, Onyeme's application for permanent residence was approved. In verifying his divorce decree, however, the INS discovered that the document was fraudulent and consequently notified Onyeme that it intended to rescind his permanent resident status pursuant to § 246(a) of the INA, 8 U.S.C.§ 1256(a).

In its Notice of Intent to Rescind Status issued to Onyeme, the INS

made eleven allegations of fact. At a master calendar hearing on the rescission of Onyeme's permanent resident status on November 24, 1992, Onyeme admitted most of the allegations contained in the notice, including allegation number (7) in which the INS alleged that "[o]n June 27, 1990, [Onyeme] testified before an officer of [the INS] stating that [his] first marriage was legally terminated." (A.R.**1** 302).

On October 26, 1993, an INS Immigration Judge (IJ) rescinded Onyeme's status as permanent resident. In rescinding Onyeme's permanent resident status, the IJ relied on Onyeme's admitted conduct in making a willfully false representation to the United States Consul in Nigeria when he represented that he was married to a Nigerian citizen in order to procure a visitor's visa to the United States. Because making a willful misrepresentation of a material fact is a basis on which to exclude an immigrant, the IJ concluded that Onyeme was excludable from the United States at the time he applied to have his status adjusted to that of legal immigrant in 1990.

On December 2, 1993, the INS issued an Order to Show Cause against Onyeme, charging him with deportability under § 241(a)(1)(B) of the INA, 8 U.S.C. § 1251(a)(1)(B), for having remained in the United States for a longer period than authorized.**2** On July 5, 1994, an IJ conducted a master calendar hearing on the order to show cause. At this hearing, Onyeme conceded that he was deportable but sought relief in the form of a suspension of deportation or, in the alternative, voluntary departure. Onyeme also represented at

_____

**1** "A.R." refers to the INS Administrative Record in this case.
**2** This provision setting forth classes of deportable aliens has been recodified at 8 U.S.C. § 1227(a) and amended, pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 208, § 305(a), 1996 U.S.C.C.A.N. (110 Stat.) 1570, 1651. THE IIRIRA was enacted on September 30, 1996, and its effective date was April 1, 1997. While certain transitional rules apply to appeals from final orders entered between October 31, 1996 and March 31, 1997, see IIRIRA § 309(c)(4)(A), Onyeme's deportation order became final on August 6, 1996, making the applicable provision the pre-amendment provision that was codified at 8 U.S.C. § 1251(a). We will, therefore, refer to the deportation provisions that apply to this appeal as previously codified at 8 U.S.C. § 1251(a).

this hearing that he had recently obtained an order from the High Court of Lagos, Nigeria declaring that the purported marriage between Onyeme and a Nigerian citizen was null and void and that any record of such a marriage was expunged from the marriage registry. In response, the INS representative asserted that it would investigate the authenticity of the order and planned to get an opinion from the United States Consul in Lagos by March 1995. The IJ then scheduled a hearing on the merits of the deportation proceedings against Onyeme for March 9, 1995.

On July 26, 1994, the INS filed a motion in opposition to Onyeme's application for a suspension of deportation or, in the alternative, voluntary departure. On November 10, 1994, the IJ ruled that Onyeme was eligible to apply for a suspension of deportation under § 244(a) of the INA, 8 U.S.C. § 1254(a). **3** Although the IJ recognized that an alien cannot obtain relief under § 244 unless the alien is found to be of good moral character and that an alien who has given false testimony for purposes of obtaining benefits under the INA is not considered to be of good moral character, the IJ found that the fraudulent divorce document submitted by Onyeme to the INS during his status adjustment proceedings was not "testimony." Therefore, the IJ found Onyeme eligible to apply for suspension of deportation and scheduled a hearing on the merits for March 9, 1995.

On January 19, 1995, the INS filed a motion for reconsideration of the IJ's order on the basis that the IJ failed to consider the oral testimony Onyeme gave the INS examiner when he told the examiner that his Nigerian marriage had been terminated. On March 9, 1995, the hearing on the merits of Onyeme's application for relief from deportation was continued to June 26, 1995.

_____

**3** The IIRIRA repealed § 244 and provides for a new procedure, called "cancellation of removal" in place of the suspension of deportation relief previously available under § 244(a) of the INA. See IIRIRA, §§ 304, 308(b)(7); see also Astrero v. INS, 104 F.3d 264, 266 (9th Cir. 1996) (discussing suspension of deportation and the new cancellation of removal provisions). The new cancellation of removal procedure is codified at 8 U.S.C. § 1229b. As discussed in footnote 2, infra, the provisions of the IIRIRA do not apply to Onyeme's deportation proceedings and, therefore, we will refer to the suspension of deportation proceedings as previously codified at § 244(a) of the INA, 8 U.S.C. § 1254(a).

4

On May 24, 1995, Onyeme moved for a second continuance on the grounds that currently pending before the BIA was an immigrant visa petition and application for waiver of excludability filed on his behalf by Jacobsen and that in the context of that appeal, the BIA would consider the validity of Onyeme's marriage to Jacobsen. **4** The INS opposed the continuance, arguing that it would be prejudiced by any further delay. Specifically, the INS noted that it opposed Onyeme's request for voluntary departure on the grounds that Onyeme had fraudulently testified before an INS official on June 27, 1990 and could not, therefore, establish that he had been "a person of good moral character for at least five years immediately preceding his application for voluntary departure." 8 U.S.C.§ 1254(e) (prescribing conditions for Attorney General's discretionary grant of voluntary departure).**5** Beginning on the day following the June 26, 1995 deportation hearing, Onyeme would be able to assert that he had been a person of good moral character for the five years prior to that date because his fraudulent testimony would have occurred more than five years before. Therefore, the INS argued that it would be prejudiced by even one day's delay in Onyeme's deportation hearing. At the June 26, 1995 deportation hearing, the IJ denied Onyeme's motion for a

---

**4** This visa petition was the second immigrant visa petition filed by Jacobsen on Onyeme's behalf and, with it, Jacobsen also filed her first application for a waiver of excludability on Onyeme's behalf. These were filed by Jacobsen on Onyeme's behalf some time after deportation proceedings were instituted against Onyeme in 1993. Unlike in the first visa petition, Jacobsen asserted in this petition that Onyeme had never been married in Nigeria. The visa petition and waiver application were denied and subsequently appealed to the BIA. This appeal was pending on May 24, 1995, when Onyeme requested a continuance of the deportation hearing.

**5** This provision setting forth the requirements for eligibility for voluntary departure, in lieu of deportation, has been recodified at 8 U.S.C. § 1229c and amended, pursuant to the IIRIRA, Pub. L. No. 208, § 304(a)(3), 1996 U.S.C.C.A.N. (110 Stat.) 1570, 1648. As discussed in footnote 2, infra, the provisions of IIRIRA are not applicable to this appeal, as Onyeme's deportation order became final on August 6, 1996, prior to the effective date of the IIRIRA. Therefore, the applicable voluntary departure provision is the pre-amendment provision that was codified at 8 U.S.C. § 1254(e). Accordingly, we will refer to the voluntary departure provisions as previously codified at 8 U.S.C. § 1254(e).

5

continuance and granted the INS's motion for reconsideration of the November 10, 1994 decision holding that Onyeme was eligible to apply for suspension of deportation on the basis that the fraudulent divorce document Onyeme submitted to the INS to support his adjustment of status was not "testimony" and, therefore, Onyeme could not be considered to have given "false testimony." See 8 U.S.C. § 1101(f)(6) (providing that no person shall be considered of good moral character who "has given false testimony for the purpose of obtaining any benefits" under the INA). Upon reconsideration, the IJ determined that Onyeme's conduct in giving false oral testimony to an INS examiner on June 27, 1990, when he admittedly told the examiner that all previous marriages had been terminated and submitted a fraudulent divorce certificate, fell within the conduct described in § 101(f)(6), 8 U.S.C. § 1101(f)(6), and precluded a finding of good moral character. The IJ stated that whether Onyeme had actually been married in Nigeria or, alternatively, whether he had never been married and was, therefore, free to marry Kristin Jacobsen, was irrelevant to his decision. Instead, the crucial fact was that Onyeme had falsely informed the INS examiner, in the course of a sworn interview, that his prior marriage had been terminated and that he did so for the purpose of acquiring a benefit under the INA, because it was this conduct that precluded a finding of good moral character. The IJ then concluded that since the fraudulent statement occurred less than five years before, Onyeme was not entitled to either suspension of deportation or voluntary departure. The IJ, therefore, ordered Onyeme deported.

Onyeme appealed the IJ's decision to the BIA. Specifically, Onyeme argued before the BIA that the IJ erred in denying his motion for continuance. Onyeme argued that the IJ's deportation order should be vacated and the case remanded to the IJ in light of his pending appeal of the denial of his visa petition and the unresolved issue of the validity of the Nigerian court decree Onyeme had obtained to prove that he had never been married in Nigeria.

On July 28, 1995, Onyeme and Jacobsen remarried on the strength of the Nigerian court decree establishing that any record of a previous marriage of Onyeme's in Nigeria had been expunged. On August 8, 1995, Jacobsen filed a third immigrant visa petition and a second waiver of excludability application, on Onyeme's behalf, citing the

6

July 1995 remarriage as the basis for her petition. The BIA subsequently dismissed her appeal of the denial of her second visa petition and initial application for a waiver of excludability, filed on Onyeme's behalf.

On August 6, 1996, the BIA dismissed Onyeme's appeal of the IJ's deportation order. The BIA rejected Onyeme's request that the case be remanded to the IJ for adjudication of his visa petition, stating that immigration judges have no jurisdiction to decide visa petitions. The BIA also found that Onyeme was statutorily ineligible for adjustment of status because Onyeme's admitted fraud in testifying before an INS official rendered him excludable under § 212(a)(6)(C) of the INA, 8 U.S.C. § 1182(a)(6)(C), and, therefore, inadmissible to the United States without a waiver of excludability issued at the discretion of the Attorney General. The BIA also rejected Onyeme's argument that the IJ erred when it denied his motion for a continuance, stating that Onyeme had not established good cause for a continuance "because an alien is not entitled to have his or her deportation delayed until a pending visa petition is adjudicated." (A.R. 5). The BIA then dismissed Onyeme's appeal.

Onyeme now seeks review of the BIA's decision, arguing that the BIA erred in upholding the IJ's denial of his motion for continuance of the deportation proceedings for resolution of Jacobsen's second visa petition filed on Onyeme's behalf and in declining to remand the matter for a continuance pending resolution of Jacobsen's third visa petition filed on Onyeme's behalf; permitting the INS to argue that Onyeme's marriage to Jacobsen was not legal, despite an IJ's decision in previous rescission proceedings that Onyeme's marriage to Jacobsen was legal; and upholding the deportation order where the INS failed to conduct a prompt investigation of the validity of the Nigerian court decree stating that Onyeme was not married in Nigeria.

II.

Whether to grant a motion to continue deportation proceedings is within the sound discretion of the IJ and is reviewed for abuse of discretion only. See Hassan v. INS, 110 F.3d 490, 492 (7th Cir. 1997); see also Bull v. INS, 790 F.2d 869, 871 (11th Cir. 1986) (holding denial of continuance to be an abuse of discretion). Accordingly,

7

when reviewing the BIA's decision upholding the IJ's discretionary action, "we . . . uphold the BIA's decision `unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis, e.g., invidious discrimination against a particular race or group.'" Hassan, 110 F.3d at 492 (quoting Castaneda-Suarez v. INS, 993 F.2d 142, 146 (7th Cir. 1993)).

A.

Onyeme first argues that the BIA committed reversible error when it upheld the IJ's denial of his motion to continue his deportation proceedings pending the resolution of Jacobsen's second immigrant visa petition filed on Onyeme's behalf. Under INS regulations, an IJ may grant a motion for a continuance in a deportation proceeding upon an alien's showing of "good cause." See 8 C.F.R. § 3.29 (1997).

In order to evaluate whether the IJ abused its discretion in denying Onyeme's motion for a continuance, it is first necessary to understand the significance of the visa petition to Onyeme's quest to obtain permanent residency. We begin, then, with a brief explanation of the steps an alien such as Onyeme must take, in the absence of deportation proceedings, to have his status adjusted to that of permanent resident.

First, because Onyeme is relying on his status as spouse of a United States citizen, Onyeme's spouse, Jacobsen, must successfully petition for an immediate relative immigrant visa on Onyeme's behalf under 8 U.S.C. § 1153(a)(2). Second, either simultaneously or subsequently, Onyeme must apply for adjustment of his non-immigrant status under § 245(a) of the INA, codified at 8 U.S.C. § 1255(a). In order to establish that he is entitled to an adjustment of status, Onyeme must show: (1) that he has applied for an adjustment of status; (2) that he is eligible to receive an immigrant visa and is admissible to the United States; and (3) that an immigrant visa was immediately available to him at the time his application was filed. See 8 U.S.C. § 1255(a).

With respect to the requirement that he be admissible to the United States, § 212 of the INA, codified at 8 U.S.C.§ 1182, contains classes

8

of aliens ineligible for visas or admission because of, for example, health-related reasons or criminal convictions. Pertinent to this petition is § 212(a)(6)(C)(i) of the INA, which includes in the class of aliens ineligible for admission "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States or other benefit provided under [the INA]." 8 U.S.C. § 1182(a)(6)(C)(i).

If Onyeme is inadmissible because he is a member of a class of aliens who are ineligible for visas or admission, his only option is to seek a "waiver of excludability." Depending on the grounds of inadmissibility, he can apply for a "waiver of excludability" based on his status as the spouse of a United States citizen. For example, § 212(i) of the INA provides that the Attorney General may, in her discretion, waive the application of the subsection excluding from admission any alien who willfully misrepresents a material fact for purposes of obtaining benefits under the INA, if: (1) the immigrant is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence; and (2) it is established to the satisfaction of the Attorney General that the refusal of admission to the United States would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien. See 8 U.S.C. § 1182(i).

Thus, the third obstacle Onyeme must negotiate, after obtaining an immigrant visa and applying for a status adjustment, is to obtain a discretionary waiver of excludability from the Attorney General. Once Onyeme has obtained an immigrant visa and a waiver of excludability, his application for adjustment of status is prima facie approvable.

In this case, Onyeme was at the first step of this process when he requested a continuance of his deportation hearing pending the resolution of Jacobsen's second visa petition filed on his behalf. For several reasons, we do not believe that the BIA erred in holding that the IJ did not abuse his discretion in denying Onyeme's request. First, at the time Onyeme sought the continuance, he had not applied for an adjustment of status. Second, because of his fraudulent conduct in testifying falsely to an INS official, Onyeme was statutorily ineligible for admission under § 212(a)(6)(C)(i) of the INA, and therefore, even if Onyeme had applied for a status adjustment, he could not show that

9

he met the requirement of being admissible into the United States. Third, the only way for Onyeme to obtain a status adjustment, notwithstanding his statutory ineligibility, was to obtain a waiver of excludability from the Attorney General. As discussed above, this relief is wholly discretionary, and there is no reason to believe that the Attorney General was so likely to grant this request that the IJ's refusal to continue deportation proceedings against Onyeme constituted an abuse of discretion. Finally, at the time Onyeme sought the continuance, Jacobsen's visa petition had been denied by the District Director, and only her appeal of that denial to the BIA was unresolved. Given Onyeme's statutory ineligibility for admission into the United States and the numerous contingencies that had to occur before Onyeme would obtain the relief he sought (but for which he had not yet even applied), we cannot say that the IJ abused its discretion in denying Onyeme's request for a continuance of the deportation proceedings.

In arguing that the BIA erred in upholding the IJ's denial of Onyeme's request for a continuance, Onyeme relies principally on the BIA's 1978 decision in In re: Garcia, 16 I. & N. Dec. 653 (BIA 1978), modified by In re: Arthur, 20 I. & N. Dec. 475 (BIA 1992), which created an exception to the general rule that deportation proceedings need not be continued for resolution of a pending visa application. In Garcia, the BIA held that an alien is generally entitled to have deportation proceedings continued or reopened, following an order of deportation, where there is currently pending an immigrant visa petition, filed on the alien's behalf, along with an adjustment of status application, where the visa petition and status adjustment application are "prima facie approvable."**6** See id. at 657; seealso Hassan,

_____

**6** In response to certain amendments to the INA in 1986 and 1990 aimed at discouraging fraudulent marriages for immigration purposes, Garcia was modified in 1992 by the BIA's decision in Arthur. See In re: Arthur, 20 I. & N. Dec. at 479. Under this modification, Garcia's presumption in favor of a continuance or reopening of deportation proceedings for consideration of applications for adjustment of status based upon pending visa petitions does not apply to visa petitions based on marriages that were entered into following the commencement of deportation proceedings against them. See id. In this case, the petition that was pending at the time that the IJ denied Onyeme's motion for continuance was the

10

110 F.3d at 492. The BIA emphasized in Garcia , however, that it did not intend to establish an inflexible rule, stating:

> It clearly would not be an abuse of discretion for the [IJ] to summarily deny a request for a continuance or a motion to reopen upon his determination that the visa petition is frivolous or that the adjustment application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the [visa] petition.

Garcia, 16 I. & N. Dec. at 657.

Although Garcia created an exception to the general rule that deportation proceedings need not be continued for resolution of a pending visa application, we do not believe that the IJ abused its discretion in declining to continue Onyeme's deportation proceedings, notwithstanding the presumption announced in Garcia. First, as set forth above, Garcia did not create an inflexible rule, requiring an IJ to continue deportation proceedings, regardless of the merits of the pending visa petition. Rather, under Garcia, the IJ retains the discretion to deny a request for a continuance where the adjustment of status application would be denied on statutory grounds. See id.; see also Hassan, 110 F.3d at 493 (holding that continuance of deportation proceedings was not merited where alien had been convicted of a crime of moral turpitude such that his visa petition and adjustment of status application were not prima facie approvable); Oluyemi v. INS, 902 F.2d 1032, 1033-34 (1st Cir. 1990) (holding no abuse of discretion where IJ denied alien's request for continuance because alien had no immigrant visa available and it was unlikely Attorney General would exercise discretion to permit excludable alien to stay). Unlike this case, Garcia involved an alien who, with the exception of having an immediately available visa, appeared to meet all of the requirements for a status adjustment. In particular, the alien in Garcia had not

_____

second petition, which was based on the 1989 marriage between Onyeme and Jacobsen, prior to the institution of deportation proceedings against him. Therefore, Arthur's modification of Garcia does not apply to Onyeme's claim that the IJ erred in denying his motion to continue based on the pendency of the second visa application.

11

engaged in any conduct which made him statutorily inadmissible to the United States. By contrast, Onyeme has admitted that he willfully misrepresented to the United States Consul in Nigeria that he was married in Nigeria in order to obtain a visitor's visa. In addition, he admitted that he gave a sworn statement to an INS examiner in June 1990 that he had terminated his previous marriage in Nigeria and that he did so in order to obtain an immigrant visa. This conduct makes Onyeme statutorily ineligible for admission into the United States under § 212(a)(6)(C) of the INA and, therefore, distinguishes this case from Garcia. See 8 U.S.C. § 1182(a)(6)(C) (providing that any alien who, by fraud or willful misrepresentation of a material fact, seeks to procure a visa or other benefit under the INA is inadmissible).

In addition, even if a continuance had been granted and Onyeme had successfully obtained an immigrant visa, he had not filed the requisite application for adjustment of status, and ultimately, he was ineligible for a status adjustment in the absence of the Attorney General's exercise of her discretion to waive his excludability. Thus, unlike in Garcia, there was no prima facie approvable visa petition pending at the time the IJ denied Onyeme's request for a continuance, and even if there had been, Onyeme was not entitled to a status adjustment since he had not applied for a status adjustment and because, without discretionary relief granted by the Attorney General, he was ineligible for a status adjustment. Under these circumstances, the BIA did not err in upholding the IJ's denial of Onyeme's request for a continuance of the deportation proceedings pending resolution of the second visa petition filed on his behalf.

B.

Onyeme also asserts that the BIA erred in declining to remand this matter to the IJ for a continuance pending resolution of the third visa petition filed on his behalf.[7] This visa petition, based on the second

_____

[7] In his brief, Onyeme does not specifically argue that the BIA erred when it declined to remand his case to the IJ. However, Onyeme relies heavily on the pendency of the third visa petition, and because this visa petition was not filed until after the IJ entered his order of deportation against Onyeme, his assertions with respect to the third visa petition make sense only if he is contesting the BIA's failure to remand the case pending resolution of that petition.

12

marriage between Jacobsen and Onyeme that took place on July 28, 1995, was filed on August 8, 1995, after the IJ's June 26, 1995 deportation order but before the BIA ruled on Onyeme's appeal from that order. We review the BIA's decision on a motion to remand, filed during the pendency of an appeal, under the same legal standard as a motion to reopen deportation proceedings, after a deportation order becomes final. See Gutierrez-Centeno v. INS, 99 F.3d 1529, 1531 n.3 (9th Cir. 1996). With respect to a motion to reopen, the Supreme Court has held that there are three independent grounds on which the BIA may deny an alien's motion to reopen deportation proceedings: (1) the alien has not established a prima facie case for the underlying substantive relief sought; (2) the alien has not introduced previously unavailable, material evidence; and (3) where relief is discretionary, the alien would not be entitled to the discretionary grant of relief. See INS v. Abudu, 485 U.S. 94, 104-05 (1988). The BIA is accorded broad discretion in ruling on a motion to reopen, and we reverse only for an abuse of discretion. See id. at 96.

As set forth above, at the time Onyeme sought remand from the BIA, he had not applied for, and was statutorily ineligible for, the ultimate relief he sought--an adjustment of his status. Because he had not established a prima facie case for an adjustment of status, the BIA did not abuse its discretion in declining to remand this case for a continuance pending resolution of the third visa petition filed on Onyeme's behalf.

III.

In addition to arguing that his deportation proceedings should have been continued pending resolution of the second and third visa petitions filed on his behalf, Onyeme raises two additional issues in his petition, each of which merits little discussion. First, Onyeme argues that the BIA erred when it permitted the INS to argue, during his deportation proceedings, that his marriage to Jacobsen was invalid, when an IJ during earlier proceedings concerning the rescission of Onyeme's permanent resident status had concluded that Onyeme's marriage to Jacobsen was legally valid, thereby establishing the "law of the case." See Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 68-69 (4th Cir. 1988) (discussing the law of the case doctrine). Onyeme's argument fails, however, because the IJ in the rescission

13

proceedings never actually decided whether Onyeme's marriage to Jacobsen was valid. Instead, the IJ rescinded Onyeme's permanent resident status on the basis that having admitted that he made a willful false representation to the United States Consul in Nigeria in order to obtain entry into the United States, Onyeme was not eligible to have his status adjusted to that of legal immigrant. Because the IJ during the rescission hearings never actually found that Onyeme was validly married to Jacobsen, such a finding cannot be the"law of the case," and the BIA did not err in permitting the INS subsequently to contest the validity of Onyeme's marriage to Jacobsen.

Second, Onyeme argues that he was denied fundamental fairness and procedural due process of law in violation of the United States Constitution because of the INS's failure to authenticate the Nigerian court decree attesting to his lack of marriage in Nigeria prior to Onyeme's deportation hearing in June 1995. See Rose v. Woolwine, 344 F.2d 993, 995-96 (4th Cir. 1965) (stating that the denial of a meaningful opportunity to present evidence in response to allegations affecting alien's deportability "casts grave doubt on the constitutional adequacy of the deportation proceedings"). Although the INS stated in July 1994, during the master calendar hearing, its intention to have the document authenticated before Onyeme's deportation hearing, there is no evidence that the INS delayed authentication unnecessarily. In addition, each of the decisions adverse to Onyeme in this case was made on the basis of his false statements either to the United States Consul in Nigeria or the INS examiner in the United States. The validity or invalidity of Onyeme's marriage to Jacobsen was not the basis of the decision to deport him. Accordingly, even assuming Onyeme possessed a protected liberty or property interest sufficient to implicate his fundamental right to procedural due process, he was not denied procedural due process by the delay in INS's authentication of the Nigerian court decree.

IV.

In sum, each of the grounds asserted by Onyeme in support of his petition for review is meritless. Accordingly, we deny Onyeme's petition for review of the BIA's final order of deportation against him.**8**

_____

**8** At the time of oral argument, two motions filed by Onyeme remained pending in this case. In the first motion, Onyeme requested this court to

14

_____

take judicial notice of the District Director's decision, on January 17, 1997, to grant the third visa petition filed on Onyeme's behalf. Because our review of final orders of deportation issued by the BIA is limited to matters contained in the administrative record, we deny Onyeme's motion to take judicial notice. See 8 U.S.C.§ 1105a(a)(4) (now repealed by the IIRIRA).

In the second motion, Onyeme sought leave to file a memorandum in response to supplemental authority provided to the court by the INS pursuant to Local Rule 28(j); an order remanding the matter to the BIA and directing the BIA to reopen Onyeme's deportation proceedings; and an order staying Onyeme's deportation. Because the INS merely cited supplemental authority under Local Rule 28(j) and did not brief the significance of that authority to the facts of this case and because the other relief sought by Onyeme is the subject of his petition for review, we deny this motion as well.